IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARGARITO CASTAÑON NAVA, et al., | ) ) ) |
| Plaintiffs, | ) No. 18-cv-3757 ) |
| v. | ) Judge Jeffrey I. Cummings ) |
| DEPARTMENT OF HOMELAND SECURITY, et al., | ) ) ) ) |
| Defendants. | ) |

**ORDER**

Defendants have filed an emergency motion for an extension of the October 22, 2025 reporting deadline set forth in the Court's October 7, 2025 Memorandum Opinion and Order, (Dckt. ##216, 217). The Court's Order required defendants to produce to plaintiffs by October 22, 2025, the A-numbers of the foreign nationals and corresponding I-213s and I-200s for all foreign nationals who were arrested pursuant to administrative warrants (namely, I-200s) not issued in conjunction with Notices to Appear (NTAs) was well as warrantless arrests that took place in the Northern District of Illinois from June 11, 2005 through October 7, 2005. (Dckt. #214 at 51).[1] Defendants now seek an extension until December 12, 2025 to make their report regarding the arrests referenced above. In support of their motion, defendants rely on the declaration of Sam Olson, the interim Field Officer Director of the U.S. Immigration and Customs Enforcement (ICE) Chicago Field Office, and they assert the following as good cause for their requested extension:

- From June 11, 2025 through October 7, 2025, ICE effectuated an estimated 1,852 of the type of arrests that the Court has ordered them to report within the Northern District of Illinois;[2]

---

[1] The Court also ordered defendants to file by October 22, 2025, a certification that it has reissued the Broadcast to all ICE officers nationwide, with the instruction that the Broadcast shall remain in effect through February 2, 2026. (Dckt. #214 at 51). Defendants have not sought relief from this requirement, and the Court expects that they will timely file the required certification.

[2] In their response, plaintiffs question whether this arrest tally includes arrests effectuated by Customs and Border Protection ("CBP") officers, who have been assigned to immigration enforcement actions in the Chicagoland area. (Dckt. #219 at 6 n.4). In its October 7, 2025 Memorandum Opinion and Order, the Court made clear that it was referring to *all* defendants collectively as "ICE." (Dckt. #214 at 1 n.2). CBP is a component of defendant Department of Homeland Security, and the Court expects and assumes that defendants will include within their arrest tally all eligible arrests effectuated by CBP officers during the specified time within the Northern District of Illinois.

1

- These arrests could include several categories, such as; (1) targeted arrests; (2) collateral/non-targeted warrantless arrests; or (3) collateral/non-targeted arrests where officers/agents issued I-200 administrative warrants in the field pre-arrest based on probable cause developed during the encounter;

- ICE's electronic systems, including ICE's Operation Management Module ($OM^2$), "do not consistently distinguish between these various administrative arrests and fact patterns." Accordingly, the only way to identify arrests requiring disclosure under the Court's order is to manually review each and every ICE arrest during the pertinent time frame to determine from the available information (namely, the I-213 and any I-200) whether the arrest requires disclosure and to take necessary steps for disclosure;

- ICE has reviewed the file locations for approximately 100 of the approximately 800 A-Files. Forty-one of these files are located in Chicago and, presumably, have actually been reviewed by ICE. An additional fifty-nine of these files are located offsite from Enforcement and Operations (ERO) Chicago, and will be transported to Chicago within one to two weeks after being requested. (The Court presumes that ICE has requested the production of these fifty-nine files); and

- Although ICE has started a review of available electronic information and has begun to request A-Files for further review, ICE estimates that it cannot complete its review and submit the Court-ordered report regarding the arrests until December 12, 2025.

(Dckt. #217-1).

In their response, plaintiffs raise questions about ICE's professed inability to identify the arrests in question without resorting to a manual paper file review, but they do not dispute defendants' assertion that they will be unable to comply with October 22 arrest reporting requirement. For their part, plaintiffs propose that defendants provide reporting on the arrests in question on a rolling basis in reverse chronological order of date of arrest to maximize the likelihood that class members identified remain in the United States and have not already been removed. (Dckt. #219 at 3, 5). Plaintiffs also bring a cross-motion to require defendants to place all potential class members identified by the parties prior to October 7, 2025, and going forward, on an ankle monitor or other Alternative to Detention (ATD) pending resolution of violation determinations. (*Id.* at 12). Plaintiffs' cross-motion is prompted by their concern that defendants' delay in producing the arrest-related information will harm the class members who are currently being detained. (*Id.* at 5-9).

The Court finds that defendants have shown good cause to extend the October 22 reporting deadline with respect to the arrest-related information described above. Accordingly, defendants' motion is granted as follows. Defendants are ordered to file reports of the arrest-related information on a rolling basis beginning on October 27, 2025 with, at a minimum, information regarding the forty-one individuals whose files are physically present in Chicago.

Defendants shall make their second report on November 3, 2025 with all additional arrest-related information that defendants have reviewed (including, but certainly not limited to, the additional fifty-nine individuals whose files are referenced in defendants' motion). Defendants shall thereafter make a weekly report on each succeeding Monday (or Tuesday in the event of a federal holiday) until their final report is submitted on December 12, 2025.[3] With the exception of the one hundred files identified in defendants' motion, defendants shall provide the arrest-related information in reverse chronological order of date of arrest to the extent practicable. To facilitate defendants' compliance, plaintiffs (to the extent that they have not done so already) shall promptly provide defense counsel with the names and any other identifying information for the more than 800 potential class members who are referenced in plaintiffs' response. (Dckt. #219 at 11).

      The parties are further ordered to promptly meet and confer regarding the relief sought by plaintiffs in their cross-motion and defendants are ordered to file their response to plaintiffs' cross-motion on or before 7:00 p.m. on October 23, 2025. This matter is set for an in-person hearing on October 24 at 1:00 p.m. to address the feasibility of the relief sought by plaintiffs' cross-motion. Defense counsel should also be prepared to address the following questions related to their production of the arrest-related information: (1) are they able to identify any violations solely from ICE's $OM^2$ and other electronic systems and, if so, how quickly can this be done; (2) did ICE, as plaintiffs assert, (Dckt. #219 at 4), move to an entirely electronic filing system more than five years ago, and if not, when did ICE move to an electronic filing system; (3) why is it necessary, as the Olson declaration suggests, for ICE to review both the electronic and physical records to assess the violations; and (4) is it possible for ICE to identify certain categories of the subject arrests (such as the collateral/non-targeted warrantless arrests) simply through electronic review. Finally, the parties should be prepared to report regarding the class members whom plaintiffs have asserted, and defendants agree, were subjected to warrantless arrests in violation of the Settlement Agreement.

**DATE: October 20, 2025**

 

**Jeffrey I. Cummings**
**United States District Court Judge**

---

[3] The November 1, 2025 reporting deadline specified in the Court's opinion is stricken.