IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARGARITO CASTAÑON NAVA, et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 18-cv-3757 |
| v. | ) ) ) | Judge Jeffrey I. Cummings |
| DEPARTMENT OF HOMELAND SECURITY, et al., | ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

Motion hearing held on February 27, 2026, on defendants' request for clarification, (Dckt. #311), and plaintiffs' motion to enforce, (Dckt. #284). For the reasons stated on the record in open court, the Court orders as follows:

(1) The Court grants defendants' request for a brief stay of the portion of the Court's February 23, 2026 order requiring defendants to re-circulate the Broadcast Statement of Policy to all ICE agents nationwide and to advise the agents that the Broadcast remains in effect as the ICE policy governing warrantless arrests until further notification by DHS and ICE.

(2) Plaintiffs shall respond to defendants' request for clarification by March 3, 2026. Defendants shall file a reply in support of their request by March 6, 2026. The Court will review the parties' submissions and will either issue a ruling by mail or set a hearing if appropriate.

(3) The Court's rulings with respect to the claims of the remaining five class members who challenge their arrests are as follows:

    a.    Jose Gonzalez-Tudare (A007)

    JGT's I-213 (Dckt. #284-44) indicates that CBP agents operating an unmarked vehicle in Chicago observed three suspects (including JGT) loading garbage into a truck parked in an alley. The agents pulled up behind where they were parked and exited the vehicle. The suspects stopped working, appearing nervous. An agent approached JGT and engaged in a conversation with him. JGT admitted that he was born in Venezuela and then produced an IL driver's license and an Employment Authorization Document. Records check confirmed that JGT's temporary protected status (TPS) was terminated. JGT was unable

1

to provide any legal documentation to enter or remain in the U.S. and the agent arrested him. The I-213 also states that he has no aggravated felony convictions.

Defendants assert that there is probable cause because JGT stopped working when the agent approached and appeared nervous (Dckt. #296 at 9). The fact that JGT appeared nervous and stopped working when the agents approached is insufficient to establish probable cause. *See, e.g., Ramirez Ovando v. Noem*, No. 1:25-CV-03183-RBJ, 2025 WL 3293467, at *16 (D.Colo. Nov. 25, 2025).

After consideration of the relevant factors, the Court finds that plaintiffs have proven by a preponderance of the evidence that JGT was arrested without a warrant and that defendants' agents lacked probable cause to believe that JGT was likely to escape before a warrant could be obtained for his arrest.

b.  Aktan Imanbekov (A110)

AI's I-213 (Dckt. #284-45 at 3) indicates that CBP agents were operating in an unmarked vehicle in Rosemont, IL when he observed a suspect (AI). AI noticed that the agents drove by and watched as he abruptly changed direction while continuing to watch the car drive by. He turned around so that the agents could get out of the car and question AI. AI voluntarily admitted that he was not a citizen or national of the U.S. and he was unable to provide any legal documentation to enter or remain in the U.S. The agent ran a records check on AI, then placed him under arrest after the check indicated that he was illegally in the U.S. without proper documentation. He then placed AI under arrest. The I-213 also indicates that AI has no aggravated felony convictions.

Defendants assert that there is probable cause because the agent noticed that AI abruptly changed the direction he was walking and continued to watch the agent's car as it drove by (Dckt. #296 at 9). At most, this fact is "merely suspicious" and it falls short of showing a "substantial probability" that he is likely to escape as is required for probable cause. *See, e.g.*, *Ramirez Ovando*, 2025 WL 3293467, at *15. After consideration of the relevant factors, the Court finds that plaintiffs have proven by a preponderance of the evidence that defendants' agents lacked probable cause to believe that JGT was likely to escape before a warrant could be obtained for his arrest.

c.  Zhao Zhijia (A032)

ZZ's I-213 (Dckt. #284-46) indicates that CBP agents were on patrol in an unmarked vehicle in Rolling Meadows when they saw an individual (ZZ) walking out of a store. As ZZ noticed the agent's uniform, he started acting nervously. The agent asked him in English and Spanish if he was born in the U.S. ZZ said he was born in China and his primary language is Mandarin. The agent used the Google translator app to ask him if he had immigration documents and he shook his head no. The agent did a records check and determined that he was present in

2

the U.S. illegally. He was then placed under arrest. He has no aggravated felony convictions

Defendants assert that probable cause exists because ZZ was walking out of a store, saw the agents, and began acting "very nervously" (Dckt. #296 at 9). This fact is insufficient to establish probable cause for the reasons stated above. After consideration of the relevant factors, the Court finds that plaintiffs have proven by a preponderance of the evidence that defendants' agents lacked probable cause to believe that ZZ was likely to escape before a warrant could be obtained for his arrest.

    d.    Leonor Valle Sosa (A286)

LVS's I-213 (Dckt. #284-47) states that CBP agents were patrolling in an unmarked vehicle in Chicago when they parked and intended to engage in a conversation with a suspect (LVS). During the agent's attempt to begin a conversation with LVS, she began to cry and asked him not to arrest her. She stated that she was here illegally in the U.S. and that she was a citizen of Mexico. The agents then arrested LVS. She has no aggravated felony convictions

Defendants assert that probable cause exists because LVS began crying when the agent approached and begged him not to arrest her and the agent indicates that she tried to flee and refused to obey instructions (Dckt. #296 at 9). The I-213's specific narrative of what occurred during the encounter does not indicate that LVS tried to flee or that she refused to obey instructions. Moreover, the fact that LVS started crying and begged not to be arrested does not support a finding of probable cause that she would be likely to flee before agents could obtain a warrant for her arrest. After consideration of the relevant factors, the Court finds that plaintiffs have proven by a preponderance of the evidence that defendants' agents lacked probable cause to believe that LVS was likely to escape before a warrant could be obtained for her arrest.

    e.    Rosalino Avelino Apale (A280)

RAA's I-213 (Dckt. #284-49) states that CBP agents were part of a roving patrol in an unmarked vehicle when they pulled into a gas station in Morton Grove to assist other agents with consensual encounters. The agent saw an individual (RAA) crossing the street towards his direction. Once RAA was in the same gas station parking lot, the agent exited his vehicle and began to walk towards RAA. RAA looked at the agent as he raised his hand to wave and say hello. RAA had a surprised look on his face and he turned in the other direction and began to run away from the agent. The agent began a foot pursuit, caught RAA before he was able to leave the parking lot, and performed a controlled takedown on RAA. He then cuffed him, picked him up, and walked him to a transport vehicle. He removed all of RAA's belongings and placed them on the ground. He then asked

3

      RAA where he was from. RAA said he was a citizen of Mexico and that he was here illegally. The agent then placed RAA under arrest.

      RAA submitted a declaration (#284-50), in which he testified to the following. On the date of his arrest, RAA was on the way to work and he was going to stop at the gas station to buy juice. He was distracted because he had headphones and was listening to music. As he was approaching the convenience store, he saw a man wearing all green running at a fast pace towards him. RAA was scared so he turned around and started running. The man caught him quickly. He never told him to stop but threw him on the ground, handcuffed him, and took him to his car. RAA did not see any identification on his uniform when he came towards him, and his uniform did not say ICE or Police. The officer asked him why he ran, and RAA told him "por miedo" (out of fear). The officers never told him that they were from ICE or that he was under arrest. RAA admitted that he was from Mexico after they had his passport. He never told them he lacked status in the U.S.

      Defendants assert that probable cause exists because RAA had a very surprised look on his face when he spotted the agent approach him and because RAA began to run away from the agent (Dckt. #296 at 9-10). RAA's I-213 indicates that the arresting agent's Axon body camera was activated during this apprehension and that this evidence has serial number A0ZYJ. (Dckt. #284-49 at 4). Defendants are ordered to produce this body camera footage to plaintiffs on or before March 6, 2026. The parties are thereafter ordered to meet and confer to see whether the video footage resolves their dispute about what occurred during the course of RAA's arrest and to file a joint status report regarding this matter (and the video footage itself) if they cannot resolve their dispute by March 13, 2026. The Court will defer ruling on RAA's claim until it receives the parties' joint status report.

(4)     For the reasons stated in detail on the record as to each individual, the Court grants plaintiffs' motion to enforce with respect to the following class members:

- Hasan Hazameh (A617);
- Luis Lopez-Rivera (A694);
- Micaela De Corral (A598);
- Emmanuel Barrer-Miranda (A788);
- Trinidad Hurtado-Perez (A844);
- Estaban Leon Marciel (A104);
- Wilson Ramos-Lopez (A925);
- Krzysztof Siwicki (A461);
- Juan Carlos Barrera Fagoada (A180);
- Julio Villela Grandos (A099);
- Richar Carrera Sazo (A532);
- Marcos Garcia-Camacho (A774);
- Eduardo Pina-Hernandez (A661);
- Carlos Ramirez-Fernandez (A262);

- Adan Rosales-Tapia (A662);
- Jose Miguel Jimenez (A550);
- Jeickson Delgado Avila (A909);
- Bernabel Pedraza Diaz (A484);
- Bellarmino Ayala Rodriquez (A528);
- Carlos Andres Gomez-Gomez (A489);
- Robeiro Usuga-Yepes (A657);
- Abraham Martinez-Nolasco (A684);
- Kevi Gonzalez-Bellorin (A489);
- Carlos Velis-Trigueros (A747);
- Octavio Rodriguez (A949);
- Jose Cortez-Simarron (A987);
- Jose Luis Monzon-Mendez (A861);
- Yorman Gonzalez-Rodriguez (A815);
- Maria Elsa Toaquiza-Vega (A968);
- Eden Ramirez-Uristegui (A991);
- Richard de Jesus Marin-Leon (A869);
- Abdurasul Bakhtyev (A948);
- Jose Gonzalez-Tudare (A007);
- Aktan Imanbekov (A110);
- Zhao Zhijia (A032); and
- Leonor Valle Sosa (A286).

(5) Defendants are ordered to facilitate the immediate release of these 36 individuals on their own recognizance and without bond or conditions of release as specified in Section IV(E)(2) of the Decree, (#155-1 at 9). These individuals shall be released by no later than 12:00 p.m. CT on March 5, 2026. Defendants shall certify in their weekly report, due at 5:00 p.m. on March 6, 2026 CT, that these individuals have been released on their own recognizance and without bond or conditions of release as required by Section IV(E)(2) of the Consent Decree.

(6) With respect to Jose Angel Polanco-Yajure (A654), defendants shall produce the body cam video from his arrest on or before March 6, 2025, and plaintiffs may seek relief from the Court's order as appropriate.

(7) For the reasons stated on the record, the Court directs defendants to produce the files of at least 50 individuals each week and defendants shall prioritize the production of files for the individuals that are still in the United States.

5

**Date: February 27, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**