IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARGARITO CASTAÑON NAVA, et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 18-cv-3757 |
| v. | ) ) | Judge Jeffrey I. Cummings |
| DEPARTMENT OF HOMELAND SECURITY, et al., | ) ) ) | |
| Defendants. | ) | |

**ORDER**

At the May 19, 2026 motion hearing on plaintiffs' April 28, 2026 motion to enforce the consent decree, (Dckt. #372), the Court reserved ruling on the claims of class members Jose Cintora Cruz (A697) and Eriksen Ventura Romero (A831) pending review of the arresting officers' body-worn camera footage. Defendants have produced the video footage in question and the Court has reviewed it. Applying the standards outlined during the May 19 hearing (*see* Dckt. #420 at 5-7), the Court rules as follow regarding the claim of Jose Cintora Cruz ("JCC").

The Court has before it JCC's I-213 (Dckt. #372-23 at 1–6); his sworn declaration (Dckt. #372-24); an I-200 warrant (Dckt. #372-23 at 7); and the body-worn camera footage of the arresting Customs and Border Patrol ("CBP") agents (Dckt. ##413, 414). In reliance on the I-213 on the one hand and JCC's declaration on the other, the parties paint a dramatically different picture of the circumstances of JCC's arrest.

In the I-213, defendants assert that CBP agents were conducting immigration enforcement in Elgin, Illinois when they observed JCC doing landscaping work and wanted to question him regarding his immigration status. When the CBP agents stopped their vehicle and got out, JCC turned his body and decided to run away from the agents. After a brief foot pursuit, the agents caught JCC, identified themselves, and asked JCC his immigration status. JCC admitted that he was in the United States illegally and that he was a citizen of Mexico. The agents then detained JCC and secured him inside their vehicle to continue their investigation. After running a records check, the agents determined that JCC was in the country without proper documents to remain legally and arrested him "in a public place without a warrant." The agents arrested JCC without a warrant based on his illegal presence in the United States and the facts discussed above. (Dckt. #372-23 at 5–6). The I-200 warrant is handwritten and indicates that it was served on JCC at Broadview. (*Id.* at 7).

For his part, in his declaration (Dckt. #372-24), JCC states that he was working with coworkers doing landscape work when he looked up and saw several trucks parked in front of

them.  While he was riding on a landscaping tractor, the agents ran towards him and aggressively took him down from the tractor while pointing guns at him.  They did not identify themselves or ask him for his legal status or documents.  Instead, they aggressively grabbed and twisted his arms back, threw him on the ground, and arrested him.  They then took him to an unmarked truck without telling him any information and they never produced an arrest warrant.

The body-worn camera footage, which the Court credits, shows that the accounts of both the agents and of JCC are inaccurate in important ways.  (Dckt. #413).  The footage shows that JCC was on a landscaping lawnmower when the CBP agents saw him and began running towards him.  When the agents reached JCC, they greeted him in Spanish and asked him where he was from.  After JCC stated that he was from Mexico, one of the agents told him to turn off the lawnmower, touched his arm, and turned him around so that he could place handcuffs on JCC as he stepped off the lawnmower.  The agents briefly removed the handcuffs to allow JCC to relieve himself in the bush and reapplied the handcuffs.  As they escorted JCC to one of their unmarked vehicles, one of the agents asked JCC whether he had any immigration-related documents that would establish his legal status and he indicated that he did not have any.  In sum, per the body-worn camera footage, JCC did *not* attempt to flee as the CBP agents approached and the agents were not compelled to chase him to arrest him.  On the other hand, there is no indication that the agents drew their guns on JCC.  Nor did they aggressively pull him off the lawnmower and throw him to the ground.  Instead, the footage reveals a relatively uneventful arrest.

Nonetheless, despite the inaccuracies within JCC's declaration, plaintiffs have shown that he is entitled to relief.  JCC was doing landscaping work on a valuable piece of equipment when the agents encountered him.  Contrary to the I-213, JCC did not attempt to flee when the agents ran towards him.  Instead, he was cooperative and answered the agents' questions to their satisfaction.  It is also clear that the agents were not worried that JCC (a 63-year-old) would escape because they uncuffed him to allow him to relieve himself.  Moreover, as courts have consistently held, the fact that JCC is in the country without documentation to be here legally does not provide probable cause that he was an escape risk.  Finally, the handwritten I-200 warrant states that it was served on JCC in Broadview, which is consistent with the I-213's statement that JCC was arrested in a public place without a warrant and supportive of a finding that the I-200 did not exist at the time JCC was arrested.

For these reasons, the Court finds that plaintiffs have proven by a preponderance of the evidence that the CBP agents subjected JCC to a warrantless arrest without probable cause that he posed a risk of escape before a warrant could be obtained.  Accordingly, JCC is entitled to relief under the Consent Decree, and he shall be released without bond and without conditions no later than noon on Monday, June 1, 2026.  Defendants shall certify their compliance with the terms of this Order by Wednesday, June 3, 2026.

**Date: May 29, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**

2