IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARGARITO CASTAÑON NAVA, et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 18-cv-3757 |
| v. | ) ) ) | Judge Jeffrey I. Cummings |
| DEPARTMENT OF HOMELAND SECURITY, et al., | ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

At the May 19, 2026 motion hearing on plaintiffs' April 28, 2026 motion to enforce the consent decree, (Dckt. #372), the Court reserved ruling on the claims of class members Jose Cintora Cruz (A697) and Eriksen Ventura Romero (A831) pending review of the arresting officers' body-worn camera footage. Defendants have produced the video footage in question and the Court has reviewed it. Applying the standards outlined during the May 19 hearing, (*see* Dckt. #420 at 5-7), the Court rules as follow regarding the claim of Eriksen Ventura Romero ("EVR").

The Court has before it EVR's I-213, (Dckt. #372-5); the sworn declaration of his partner, Rosalia Suarez Medina ("RSM"), (Dckt. #372-6); video footage from bystanders who witnessed EVR's arrest, (Dckt. #378); the body-worn camera footage of eight Customs and Border Patrol ("CBP") agents who were involved in EVR's arrest, (Dckt. #409); and the declaration of Judith Mencia, a Litigation Project Manager at the National Immigrant Justice Center, who reviewed the body-worn camera footage, is fluent in English and Spanish, and provided a Spanish to English interpretation of key portions of the dialogue in Spanish between one of the CBP agents and EVR on the footage from body-worn camera video number 8, (Dckt. #417-1).

Defendants also assert that they produced an I-200 warrant for EVR to plaintiffs on April 29, 2026 (the day after plaintiffs filed their motion to enforce and long after the warrant should have been produced pursuant to the Court's prior orders). However, for reasons unknown, defendants neither attached the I-200 to their response brief nor offered any explanation for their belated production of what they assert is a document that is dispositive of EVR's claim. (*See* Dckt. #384 at 2 ("Defendants produced an I-200 warrant for this individual (EVR) to Plaintiffs on April 29, 2026, demonstrating that this was not a warrantless arrest in violation of the Agreement.")). In their reply, plaintiffs assert that they have been prejudiced by defendants' belated and unjustified production of EVR's I-200 and that the Court should decline to consider any evidence of the warrant as a sanction under Federal Rule of Civil Procedure 37(c)(1). (Dckt. #391 at 6-7). The Court agrees with plaintiffs for the reasons stated on the record during the

April 29, 2026 motion hearing where the Court ordered a similar sanction based upon defendants' unjustified delay in the production of other class members' I-200 warrants. (Dckt. #390 at 5-11).

The record establishes the following. On the morning of October 14, 2025, EVR and his partner RSM (who was in the third trimester of a high-risk pregnancy) drove to a medical appointment at Erie Heath Center located in the West Town neighborhood in Chicago at the intersection of Superior Street and Paulina Street. There were no parking spaces available in front of the Center, so EVR remained in the car while RSM went inside for treatment. CBP agents who were on patrol operations in an unmarked vehicle noticed EVR (whom the I-213 described as having a medium brown complexion) sitting in the driver's seat of his parked vehicle. Additional CBP agents soon arrived on the scene. In total, it appears that approximately eight CBP agents in four unmarked vehicles were present.

One of the CBP agents approached EVR, identified himself in Spanish, and asked about his immigration status. EVR told the agent that he was from Venezuela, his pregnant wife was in the building, and that she had his immigration documents upstairs. The agents ordered EVR to get out of the car in Spanish and in English, and they threatened to break his car window. The Spanish speaking agent repeatedly told EVR that he would have to prove that he was in the country legally. In response, EVR told the agent that he was going to call his wife and he did so via FaceTime (which was visible from the agent's body-worn camera). EVR repeatedly stated that he was not going anywhere and that he was waiting on his wife. EVR also rolled his window down part way, gave the agent his employment authorization card ("EAD"), and told the agent that he would get out of his vehicle when his wife came down. EVR also told the agent that he did not have any weapons.

When the Spanish speaking agent walked away to run a records check on EVR, other agents approached EVR and told him to turn off his car (which he did) and that he needed to open the door or they would break his window. One or more agents also told EVR that if he's illegal, he's going to jail. One agent who seemed to be in charge of the team instructed the other agents to pull their vehicles very close to the front and back of EVR's vehicle to pin him in. After running the records check, the agent found that EVR had an active Notice to Appear and that he was not lawfully present in the United States.

As this was occurring, a handful of employees from the Center and other neighborhood bystanders approached and began loudly questioning the CBP agents about their interaction with EVR. Some also blew whistles. Nonetheless, all bystanders complied with the CBP agents' orders to stay back and there was no physical contact between the agents and the bystanders.

One of the agents stated loudly that EVR was a Venezuelan who was illegally here, so they had to extract him. According to the I-213, EVR's "unlawful presence warranted arrest under 8 U.S.C. §1357(a)(2)" and he informed EVR that he was under arrest. After warning EVR one last time that he had to open the door and exit the car, one of the agents used a tool to break EVR's window and open the door. EVR briefly resisted efforts to remove him from the car but then cooperated in getting out as the agents grabbed and pulled him. The officers turned EVR around and were able to handcuff him without a struggle after he tossed his car keys to one of the

2

Center employees.  EVR walked cooperatively as one of the agents physically escorted him toward the front of his vehicle.  However, once he cleared the front of his vehicle and came closer to the building's door, EVR became distraught, started yelling for his wife, and attempted to pull away.  Agents then pushed EVR onto the hood of his vehicle and forced him into their vehicle after tasing him four times in drive-stun mode.[1]  The CBP agents then got into their vehicles and drove away.

Plaintiffs have shown that EVR is entitled to relief.  To begin, "[t]o stop an individual for brief questioning about immigration status, the Government must have reasonable suspicion that the individual is illegally present in the United States." *Noem v. Vasquez Perdomo*, 146 S.Ct. 1, 3 (2025) (Kavanaugh, J., concurring).  Based on the record before the Court, it is far from clear that the CBP agents had reasonable suspicion to question EVR in the first place.  To begin, the I-213, (Dckt. #272-5 at 3), provides no reason other than the fact that EVR was seated in the driver's seat of a parked car.  No case (to this Court's knowledge) has ever held that the fact that a person is sitting in parked car, standing alone, provides reasonable suspicion to question that person about their immigration status.  But there is one additional fact that the agents observed: EVR is a Latino man with a medium brown complexion.  It is "clear" that "apparent ethnicity alone cannot furnish reasonable suspicion," and none of the other "salient factors" cited by Justice Kavanagh in his concurring opinion in *Noem* are present.  *Noem*, 146 S.Ct. at 3 (Kavanaugh, J., concurring).  "Where, as here, an 'arrest follows an investigatory stop, the Government bears the burden of demonstrating both that there was reasonable suspicion for the stop and probable cause for the arrest.'"  *United States v. Dorlette,* 706 F.Supp.2d 290, 297 (D.Conn. 2010), *quoting United States v. Ferguson*, 130 F.Supp.2d 560, 565-66 (S.D.N.Y. 2001).

Even if defendants had reasonable suspicion to question EVR in the first place, plaintiffs have shown that they lacked probable cause to believe that EVR was likely to escape before a warrant could be obtained as required by the Consent Decree and 8 U.S.C. §1357(a)(2).  Indeed, the evidence thoroughly undercuts the existence of probable cause.  EVR repeatedly stated to the Spanish speaking agent that he was not going anywhere and that he was going to wait for his pregnant wife.  He did not even want to get out of his car.  EVR cooperated with the agents by stating that he was from Venezuela in response to their questioning, turning his car off in response to their order, and providing his EAD card when they asked for documentation.  The agents knew that he was employed (the I-213 notes that he worked as a laborer) and they also knew that he had family in town and was expecting to become a father.  Moreover, the mere fact that he was in a parked car does not provide probable cause, *see, e.g.*, *Ramirez Ovando v. Noem*, 810 F.Supp.3d 1209, 1232-33 (D.Colo. 2025), particularly given that he was pinned in by the CBP agents' vehicles and thus could not have driven away even if he tried.  *See United States v. Quintanilla-Chavez*, 807 F.Supp.3d 641, 665 (W.D.Tex. 2025) (holding that "the likelihood of the Defendant's escape – and thus the basis of his arrest – evaporated once he was blocked in by the TX-DPS vehicles.").  Finally, EVR (who had no weapons) was surrounded by eight armed CBP agents.  It is inconceivable that he could have escaped on foot even if he had wanted to leave his vehicle.

---

[1] The agents' body-worn camera footage does not confirm the I-213's statement that EVR "attempted to flee on foot" and that the agent who authored the I-213 had to pursue him.

For these reasons, the Court finds that plaintiffs have proven by a preponderance of the evidence that the CBP agents subjected EVR to a warrantless arrest without probable cause that he posed a risk of escape before a warrant could be obtained. Accordingly, EVR is entitled to relief under the Consent Decree, and he shall be released without bond and without conditions no later than noon on Thursday, June 4, 2026. Defendants shall certify their compliance with the terms of this Order by Friday, June 5, 2026. With this ruling, plaintiffs' motion to enforce the consent decree, (Dckt. #372), is fully resolved.

**Date: June 1, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**

4